IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. VEIT | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:18-CV-00576 |
| | § | JURY DEMANDED |
| LYONDELL CHEMICAL COMPANY | § | |
| | § | |
|     Defendant. | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated:  August 30, 2019

Respectfully submitted,

EVERSHEDS SUTHERLAND (US) LLP

By: */s/ Marlene C. Williams*
    Marlene C. Williams
    Attorney-in-Charge
    Fed. ID No. 22824
    State Bar No. 24001872
    1001 Fannin, Suite 3700
    Houston, TX 77002
    Telephone: (713) 470-6100
    Facsimile: (713) 654-1301
    MarleneWilliams@eversheds-sutherland.com

OF COUNSEL
Scott R. McLaughlin
Fed. ID No. 18138
State Bar No. 00791234
John T. Hays
Fed. ID No. 3015861
State Bar No. 24101885
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
ScottMcLaughlin@eversheds-sutherland.com
JohnHays@eversheds-sutherland.com

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ....................................................2

III.   ISSUES TO BE RULED ON BY THE COURT ..................................................3

      A.    Whether Plaintiff can establish a prima facie case that Lyondell
discriminated against him based on his age in violation of the ADEA. .................3

      B.    Whether Plaintiff can establish a prima facie case that Lyondell
discriminated against him based on his alleged disability in violation of
the ADA. .................................................................................................................3

      C.    Assuming Plaintiff can establish a prima facie case on either of his claims,
whether he is able to show that Lyondell's legitimate and non-
discriminatory reason for its actions against him, if any, are pretext for age
and/or disability discrimination. ............................................................................3

IV.    STATEMENT OF UNDISPUTED FACTS ..........................................................3

      A.    Plaintiff's Employment and Performance on the Expansion Project......................3

      B.    Plaintiff's medical emergency and subsequent medical leave................................6

      C.    Plaintiff's return to work and subsequent termination...........................................8

      D.    Plaintiff cannot identify any specific instances of alleged discrimination. ............9

V.     STANDARD OF REVIEW .................................................................................11

VI.    ARGUMENT AND AUTHORITIES .................................................................12

      A.    Plaintiff cannot establish a prima facie case of age discrimination. .....................12

      B.    Plaintiff cannot establish a prima facie case of disability discrimination..............13

      C.    Even if Plaintiff Makes a Prima Facie Case of Age or Disability
Discrimination, Lyondell Had a Legitimate Non-Retaliatory Reason for
the Termination and Plaintiff Cannot Show Pretext. ............................................15

VII.   CONCLUSION AND RELIEF SOUGHT ..........................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986).................................................................11

*Auguster v. Vermillion. Parish Sch. Bd.*,
249 F.3d 400 (5th Cir. 2001) ..............................................................................16

*Barfield v. Fed. Express Corp.*,
351 F. Supp. 3d 1041 (S.D. Tex. 2019) .........................................................13, 17

*Bleak v. Providence Health Ctr.*,
454 F. App'x 366 (5th Cir. 2011) ...................................................................14, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986).................................................................11

*Cox v. Univ. of Texas MD Anderson Cancer Ctr.*,
2010 WL 3825411 (S.D. Tex. Sept. 28, 2010) ....................................................15

*E.E.O.C. v. LHC Grp., Inc.*,
773 F.3d 688 (5th Cir. 2014) ..............................................................................17

*Ellini v. Ameriprise Fin., Inc.*,
881 F. Supp. 2d 813 (S.D. Tex. 2012) .................................................................16

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994) ..............................................................................11

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)............................................................................................13

*Harding v. Am. Stock Exch., Inc.*,
527 F.2d 1366 (5th Cir. 1976) ..............................................................................2

*Jackson v. Cal-W Packaging Corp.*,
602 F.3d 374 (5th Cir. 2010) ..............................................................................12

*Leal v. McHugh*,
731 F.3d 405 (5th Cir. 2013) ..............................................................................17

*Mayberry v. Vought Aircraft Co.*,
55 F.3d 1086 (5th Cir. 1995) ..............................................................................15

*Moss v. BMC Software, Inc.*,
    610 F.3d 917 (5th Cir. 2010) .......................................................................................12, 15, 17

*Nomani v. Star Furniture Co.*,
    2016 WL 4192057 (S.D. Tex. Aug. 8, 2016) .........................................................................16

*Obasogie v. Harris Cty. Hosp. Dist.*,
    2013 WL 6916246 (S.D. Tex. Dec. 31, 2013).........................................................................11

*Okoye v. Univ. of Tex. Houston Health Science Ctr.*,
    245 F.3d 507 (5th Cir. 2001) ..................................................................................................16

*Osamor v. Channel 2 News*,
    No. CIV. A. H-09-2788, 2010 WL 2036013 (S.D. Tex. May 19, 2010)...................................2

*Rachid v. Jack In The Box, Inc.*,
    376 F.3d 305 (5th Cir. 2004) ..................................................................................................18

*Reed v. Neopost USA, Inc.*,
    701 F.3d 434 (5th Cir. 2012) ..................................................................................................17

*Sandstad v. CB Richard Ellis, Inc.*,
    309 F.3d 893 (5th Cir. 2002) ..................................................................................................16

*Shackelford v. Deloitte & Touche, LLP*,
    190 F.3d 398 (5th Cir. 1999) ..................................................................................................16

*Sherrod v. Am. Airlines, Inc.*,
    132 F.3d 1112 (5th Cir. 1998) ................................................................................................13

*Thomas v. Johnson*,
    788 F.3d 177 (5th Cir. 2015) ..................................................................................................15

*TIG Ins. Co. v. Sedgwick James of Wash.*,
    276 F.3d 754 (5th Cir. 2002) ..................................................................................................11

*Vaughn v. Woodforest Bank*,
    665 F.3d 632 (5th Cir. 2011) ..................................................................................................16

*Willis v. Roche Biomed. Labs.*,
    61 F.3d 313 (5th Cir. 1995) ....................................................................................................11

**Statutes**

42 U.S.C. § 1988...........................................................................................................................2

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*........................... *passim*

Americans with Disabilities Act. 42 U.S.C. § 12101, *et seq.* ................................................. *passim*

Family Medical Leave Act..........................................................................................................7

**Other Authorities**

Federal Rules of Civil Procedure Rule 56 ................................................................1, 11

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL J. VEIT** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:18-CV-00576** |
| | § | **JURY DEMANDED** |
| **LYONDELL CHEMICAL COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Defendant Lyondell Chemical Company ("Lyondell" or the "Company") files this Motion for Summary Judgment ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and respectfully shows the Court as follows:

## I.      INTRODUCTION

The Court should dismiss Plaintiff's age discrimination and disability discrimination claims against Lyondell in their entirety. As explained in detail below, Plaintiff's claims each fail at the prima facie stage because there is insufficient evidence that: (1) Lyondell's actions, including terminating his employment, were because of Plaintiff's age; or (2) Lyondell's decision to transfer Plaintiff to a different project upon return from medical leave was in any way related to his age or alleged disability. Plaintiff's disability discrimination claim also fails because his transfer to a different project upon return from medical leave was not an adverse employment action. Even if Plaintiff could establish a prima facie case on his age or disability discrimination claims, which he cannot, Lyondell is still entitled to dismissal because it had a legitimate, non-discriminatory reason for terminating Plaintiff and Plaintiff cannot present sufficient evidence of pretext. Specifically, Lyondell terminated Veit because he exhibited serious performance deficiencies that resulted in

1

significant project delays and negatively affected his team members' morale. Indeed, Lyondell received numerous complaints from employees and vendors regarding Plaintiff's conduct and personnel management practices. Additionally, while Plaintiff was on medical leave, Lyondell discovered significant issues in Plaintiff's handling of technical disciplines, logistics, and vendor management, which arose due to his oversights and resulted in significant cost overruns. Thus, Lyondell's decision to terminate Veit had nothing at all to do with his age or alleged disability. Based on this record, Plaintiff's claims fail as a matter of law and Lyondell is entitled to dismissal of Plaintiff's claims against it in their entirety, with prejudice.

## II.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Michael J. Veit ("Veit" or "Plaintiff") filed this lawsuit on February 25, 2018.[1] He alleges various causes of action including age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA") and disability discrimination[2] under the Americans with Disabilities Act. 42 U.S.C. § 12101, *et seq.* (the "ADA").[3] Lyondell filed its Answer and Affirmative Defenses on March 30, 2018.[4] Plaintiff's case was reassigned to this Court on July 13, 2018.[5] Discovery ended on July 26, 2019. Lyondell now files its Motion and respectfully requests that the Court dismiss Plaintiff's claims against it with prejudice.

---

[1] *See* Plaintiff's Original Complaint ("Complaint") Dkt. No. 1.

[2] Plaintiff's claims regarding his alleged disability are limited to discrimination and do not include claims regarding failure to accommodate.

[3] Complaint at ¶ 1. Plaintiff also alleges that his cause of action arises under "42 U.S.C. § 1998." *Id.* Lyondell assumes this is a typographical error and Plaintiff meant to state 42 U.S.C. § 1988. Regardless, Section 1988 merely instructs courts which laws apply to federal civil rights claims and does not create a cause of action upon which Plaintiff can rely. *Harding v. Am. Stock Exch., Inc.*, 527 F.2d 1366, 1370 (5th Cir. 1976). Accordingly, to the extent Plaintiff purports to support his claims against Lyondell pursuant to Section 1988, those claims fail, including for the reasons described in this Motion, and should be dismissed. *Id. see also Osamor v. Channel 2 News*, No. CIV. A. H-09-2788, 2010 WL 2036013, at *3 (S.D. Tex. May 19, 2010).

[4] *See* Dkt. No. 7.

[5] *See* Dkt. No. 13.

### III.    ISSUES TO BE RULED ON BY THE COURT

A.    Whether Plaintiff can establish a prima facie case that Lyondell discriminated against him based on his age in violation of the ADEA.

B.    Whether Plaintiff can establish a prima facie case that Lyondell discriminated against him based on his alleged disability in violation of the ADA.

C.    Assuming Plaintiff can establish a prima facie case on either of his claims, whether he is able to show that Lyondell's legitimate and non-discriminatory reason for its actions against him, if any, are pretext for age and/or disability discrimination.

### IV.    STATEMENT OF UNDISPUTED FACTS

Lyondell, a subsidiary of LyondellBasell Industries, N.V., and its affiliated companies manufacture a variety of chemical products and refine various petroleum products, including gasoline, ultra-low sulfur diesel, jet fuel, aromatics and lubricants. *See* Exhibit A, Declaration of Angela Silvagnoli ("Silvagnoli Dec.") at ¶ 3.  Lyondell is an equal opportunity employer and adheres to all applicable federal, state, and local laws and regulations. Silvagnoli Dec. at ¶ 3. Lyondell maintains and strictly enforces an Equal Employment Opportunity Policy and a Harassment and Discrimination-Free Workplace Policy that prohibits discrimination, harassment, and retaliation against an employee for any reason, including based on disability and/or age. Silvagnoli Dec. at ¶ 3.

#### A.    Plaintiff's Employment and Performance on the Expansion Project.

Equistar Chemicals, LP ("Equistar")[6] owns and operates a facility in Corpus Christi, Texas, known as the Corpus Christi Complex, which produces ethylene, propylene, and other fuel products. Silvagnoli Dec. at ¶ 4. In 2013, Equistar announced plans to expand the existing ethylene cracker facilities at the Corpus Christi Complex (the "Expansion Project" or "Project"). Silvagnoli Dec. at ¶ 4. Lyondell had to shut down the entire Corpus Christi Complex to complete the

---

[6] Equistar is a wholly-owned subsidiary of LyondellBasell N.V.

Expansion Project and coordinated the work to occur during a regularly scheduled maintenance turnaround (the "Turnaround"). Silvagnoli Dec. at ¶ 4. Together, the Company referred to the Turnaround and the Expansion Project as the Corpus Christi Event (the "Event"). Silvagnoli Dec. at ¶ 4.

The Company hired Plaintiff on August 26, 2014 to oversee the Expansion Project as the Associate Director, Projects within the Company's Global Projects Group.[7] Silvagnoli Dec. at ¶ 5. Plaintiff's position was an M1 level, which is a highly compensated manager grade role within the Company. Silvagnoli Dec. at ¶ 5. Plaintiff's level and position at hire were the same position and level he held when he returned from medical leave and at his termination. Silvagnoli Dec. at ¶ 5.

In his role, the Company expected that Plaintiff would lead the multi-discipline project management teams, including Company and contractor personnel, to successful completion of the Expansion Project. *See* Exhibit B, Declaration of Stanley Tripp ("Tripp Dec.") at ¶ 4.  In order to lead the Expansion Project, Plaintiff had to work hand in hand with the Site Manager, Randy Tatum ("Tatum"), the Turnaround team leader, Allan Valenta ("Valenta") and the Event team leader, Michael Cain ("Cain"). Tripp Dec. at ¶ 4. Additionally, Plaintiff had to work closely with the contracting company, AMEC Foster Wheeler USA Corporation ("AFW") to ensure the proper preparation and implementation of the Expansion Project plans. Tripp Dec. at ¶ 4. Indeed, one of the main reasons the Company hired Plaintiff – other than his stated extensive project management experience – was his previous work experience with AFW. Tripp Dec. at ¶ 3. Additionally, Lyondell's Director of Project Management Services for the Global Projects Group, Patrick McFall, had known Plaintiff personally and professionally from working together on various

---

[7] Plaintiff was 65 years old when Lyondell hired him as an Associate Director, Projects in the Global Projects Group. Silvagnoli Dec. at ¶ 5.

4

engineering projects over a period of approximately 30 years and thought he would be a good leader for the project. Tripp Dec. at ¶ 3.

The Expansion Project was behind schedule when the Company hired Plaintiff. Tripp Dec. at ¶ 5. Plaintiff knew that Lyondell expected him to help improve the interactions between the company and contractors on the Expansion Project. *See* Exhibit C, Excerpts from the Deposition Transcript of Michael Veit ("Veit Dep.") at 48:23-49:12 However, instead of working to improve communication on the Project, Plaintiff's harsh management style resulted in almost immediate diminishing results. Tripp Dec. at ¶ 5. Indeed, as early as December 2014, just four months after Plaintiff began working for Lyondell, Tripp became aware of concerns regarding Plaintiff's behavior and lack of leadership on the Project. Tripp Dec. at ¶ 5. Many of the Lyondell employees who worked for Plaintiff directly on the Project also indicated that Plaintiff instructed them not to share information about the Project with other members of the Project team. Silvagnoli Dec. at ¶ 6. Additionally, a number of Lyondell employees who worked directly with Plaintiff on the Project described Plaintiff as a "bully" and "hard to work with." Silvagnoli Dec. at ¶ 6.  By June of 2015, Plaintiff's rogue management practices caused one of Plaintiff's colleagues – and well-respected member of Lyondell's engineering team on the Project – to request a meeting with McFall and Tripp regarding Plaintiff's conduct. *See* Exhibit B-1 to Tripp Dec. Specifically, Plaintiff had publicly humiliated his colleague and the company in front of contractors from AFW by accusing him of lying about the status of a certain part of the Project. *Id.*[8]

In the wake of these complaints regarding Plaintiff's behavior and lack of leadership, Angela Silvagnoli conducted an investigation. Silvagnoli Dec. at ¶ 6. The Company's investigation

---

[8] Tripp actually considered removing Plaintiff from his role on the Project due to the complaints regarding his conduct and lack of leadership but did not have another senior level project manager that could readily step in to the role. Tripp Dec. at ¶ 6. Accordingly, Tripp determined that he would keep Plaintiff in the role until the completion of the engineering portion of the Project, at which point the Company could remove Plaintiff. Tripp Dec. at ¶ 6.

concluded that: (1) multiple witnesses confirmed that Plaintiff demonstrated performance shortcomings in relationship building and interpersonal capability, teamwork, and managing engineering work including by AFW; and (2) Plaintiff had indeed instructed multiple employees on the Global Projects team to withhold information from the Turnaround team and Event Team. Silvagnoli Dec. at ¶ 6.

Many other individuals from the Event had similar difficulties communicating with Plaintiff about the Project. Tripp Dec. at ¶ 6. According to Plaintiff, the communication issues on the Project were simply the result of everyone else on the Project allegedly refusing to expose themselves "politically" within the Lyondell hierarchy. Veit Dep. at 160:12-161:17.  Lyondell coordinated a teambuilding session between the leaders of the various teams on the Event, including Plaintiff, to enhance the quality of communications between the Event leadership teams. Tripp Dec. at ¶ 6. This session was intended to alleviate some of the communication issues the teams were experiencing on the Event and increase synergies. Tripp Dec. at ¶ 6. There was genuine concern from Valenta, Tatum, and Cain, among others, that the teambuilding meeting was necessary to get the Project back on the right track. Tripp Dec. at ¶ 6. Unsurprisingly, Plaintiff felt that the meeting was a complete waste of time and did not take it seriously. Veit Dep. at 154:8 – 155:7; 156:22–157:10; 198:13–199:20; *see also* Tripp Dec. at ¶ 6.[9]

### B.    Plaintiff's medical emergency and subsequent medical leave.

On June 25, 2015, Plaintiff suffered a heart attack and requested medical leave. Veit Dep. at 69:5-8; 74:7-13. Although Plaintiff had not yet been employed with Lyondell long enough to be

---

[9] In fact, Plaintiff submitted a rebuttal statement to the EEOC that attacked Tripp as "inept with no leadership acumen" and McFall as "weak" when describing the circumstances leading up to the teambuilding meeting, which Plaintiff stated was a "joke." *See* Exhibit D, Plaintiff's Rebuttal Statement to the EEOC at p. 7.

eligible for leave under the Family Medical Leave Act ("FMLA"), the Company allowed him to take 12 weeks of paid leave. Veit Dep. at 74:19-75:14.

During Plaintiff's medical leave, McFall assumed Plaintiff's role on the Project temporarily to manage the Project team. Tripp Dec. at ¶ 7. McFall immediately noted significant issues including technical problems in various disciplines and mismanagement of vendors and logistics – all of which allowed project costs to skyrocket and created significant delays in completion deadlines. Tripp Dec. at ¶ 7.

Admittedly, Plaintiff's medical condition was serious. While on medical leave, Plaintiff underwent two surgeries. Veit Dep. at 91:20-21. The first surgery occurred shortly after arriving to the hospital in June and included placement of a stent. Veit Dep. at 71:22. The second surgery, to remove an aneurism, did not occur until Plaintiff was scheduled to return to work following the first surgery. Veit Dep. at 72:8-16. McFall occasionally visited with Plaintiff while he was on medical leave. Veit Dep. at 217:5-19 However, as Plaintiff admits, his interactions with McFall regarding his health during his medical leave were based on his long personal relationship with McFall and were not related to work. Veit Dep. at 217:5-19. Indeed, Plaintiff admits that McFall's "suggestion" that he consider retiring was a result of their friendship, not their work relationship. Veit Dep. at 219:9-220:2.

Plaintiff also stated that while he was on medical leave, he and McFall discussed several different potential projects with which Plaintiff could be involved once he was able to return to work. Veit Dep. at 85:8-12. However, the upcoming projects were mainly in the preliminary planning stages. Veit Dep. at 85:16-22. That said, Plaintiff testified that he and McFall discussed the potential that the Company would assign him to one of the new projects upon his return. Veit Dep. at 86:16-87:2.

### C.      Plaintiff's return to work and subsequent termination.

Plaintiff was cleared to return to work with restrictions[10] on September 21, 2015. Silvagnoli Dec. at ¶ 7. However, by the time Plaintiff returned to work, the Company estimated that the engineering portion of the Project, for which Plaintiff was previously responsible, would be complete in approximately four weeks. Tripp Dec. at ¶ 8. Therefore, the Company determined that returning Plaintiff to the Project after such a long absence and with so little time remaining until its estimated completion would be counterproductive – especially in light of the tortured work environment Plaintiff created while assigned to the Project. Tripp Dec. at ¶ 8. As a result, McFall and Tripp decided to assign Plaintiff to a new project (bigger in scope compared to the Expansion Project) that McFall discussed with Plaintiff while he was on medical leave. Tripp Dec. at ¶ 8.

In November 2015, the Company conducted a cost-re-estimate for the Project to accurately forecast the completion budget.  Tripp Dec. at ¶ 9. The Company completed the cost re-estimate in January 2016 and determined that cost overruns for the Expansion Project totaled approximately $270MM. Tripp Dec. at ¶ 9. Additionally, the Company's cost re-estimate attributed the overruns to poor project management, including in planning and estimation from the Project Controls Group, much of which occurred during Plaintiff's time leading the Project. Tripp Dec. at ¶ 9. Accordingly, Tripp and his Manager, Kevin Brown, made the decision to terminate Plaintiff's employment due to his poor performance as Associate Director, Projects, which included Plaintiff's unacceptable behavior that the Company confirmed through its investigation of complaints regarding Plaintiff's conduct. Tripp Dec. at ¶ 9. In addition to Plaintiff's missteps on the Project, the Company also determined that two additional Lyondell employees in the Global Projects Group repeatedly relayed inaccurate costs and scheduling data, which also contributed the

---

[10] Plaintiff's restrictions upon returning to work did not limit his ability to perform his duties as an M1 Level Associate Director, Projects. Silvagnoli Dec. at ¶ 7.

cost overruns on the Project. Tripp Dec. at ¶ 10. On review, Tripp made the decision, along with his manager, Kevin Brown, to terminate both of these employees at approximately the same time the Company decided to terminate Plaintiff. Tripp Dec. at ¶ 10.

The Company terminated Plaintiff's employment on January 26, 2016, about a year and a half after it hired him and more than four months after he returned to work following his medical leave. Silvagnoli Dec. at ¶ 8. Tripp attended the termination meeting along with Ms. Silvagnoli. Tripp Dec. at ¶ 11. During the brief meeting, Tripp indicated that the Company was terminating Plaintiff's employment and cited his poor performance on the Project and abrasive management practices. Tripp Dec. at ¶ 11. Plaintiff testified that he knew the *real* reason for his termination was that the Company needed a "scapegoat" – apparently, to take the fall for the Project overruns. Veit Dep. at 118:14-119:14; 119:7-10; 120:20-24.

### D.    Plaintiff cannot identify any specific instances of alleged discrimination.

Plaintiff never made allegations during his employment that the Company treated him disparately based on his age or alleged disability. Veit Dep at 121:6-19. Instead, Plaintiff created his age and disability discrimination claims after his employment ended but cannot show any specific instances of discrimination – a fact which is fatal to both of his claims.

Plaintiff alleges that McFall's suggestion that he consider retiring is evidence that the Company discriminated against him based on his age. *See* Complaint at ¶ 22. However, Plaintiff and McFall had a personal relationship that spanned more than 30 years. Veit Dep. at 40:17-21; 159:19-20; 159:25-160:3. Moreover, Plaintiff testified that McFall's conversations with him regarding retirement were on a personal level, not professional. Veit Dep. at 219:20-220:2.

Plaintiff also alleges that, in his opinion, the Company has a history of terminating project managers. Veit Dep. at 116:2-12. However, Plaintiff could only name one other individual that the Company allegedly terminated based on age. Veit Dep. at 117:8-16. Moreover, Plaintiff did not

have personal knowledge regarding this employee and could not give any details regarding this employee's departure other than things he heard from other people within the organization. Veit Dep. 117:20-118:13.

Plaintiff also could not articulate a basis for his allegation that the Company discriminated against him based on his alleged disability. Veit Dep. at 120:25-121:19. Instead, Plaintiff appears to allege, albeit generally, that the Company's decision to place him in a "different position" after returning from medical leave shows that the Company regarded him as disabled.[11] However, as stated, the Company placed Plaintiff on a new assignment upon his return from medical leave and he maintained his M1 level and Associate Director, Projects title. Additionally, Plaintiff did not testify that his medical condition limited a major life activity, such as working, or that the Company regarded him as having a disability that limited his ability to work. Veit Dep. at 75:15-76:13. Instead, Plaintiff stated that the only bases for his disability discrimination claim are that: (1) the Company placed him in a different position upon return from medical leave; and (2) in Plaintiff's opinion, the Company terminated him because it was worried about the cost associated with providing him healthcare in the future. Veit Dep. at 77:25-78:9; 84:17-22; 92:25-93:21; 205:8-14; 206:1-17. However, Plaintiff could not identify a single incident that led him to believe the Company was concerned about the cost of continuing healthcare. Veit Dep. at 93:18-21; 95:7-12. Instead, Plaintiff admitted that he merely relied on his own opinions and beliefs about the events precipitating his termination from Lyondell.  Veit Dep. at 68:11-22 and 112:7-17.

---

[11] Strangely, Plaintiff also testified that the Company discriminated against him by placing him in a new role upon return from medical leave because the FMLA requires the Company to return him to the same or similar position. Veit Dep. at 84:17-85:15. However, Plaintiff does not have a claim under the FMLA. *See* Complaint. Moreover, as stated above, Plaintiff was not even FMLA eligible at the time of his medical leave but the Company allowed him to take paid leave nonetheless to accommodate his unexpected medical absence. Veit Dep. at 74:19-75:14; 204:20-25.

## V.      STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[12] "Importantly, 'the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material.'"[13] Facts are material when the resolution of those facts "might affect the outcome of the suit under the governing law . . . ."[14] A plaintiff's unsubstantiated opinions and beliefs are not competent summary judgment evidence.[15] Similarly, "[c]onclusory allegations and denials, speculation, [and] improbable inferences . . ." are not sufficient to defeat summary judgment.[16]  In other words, to survive a defendant's motion for summary judgment the plaintiff must produce specific evidence upon which a jury could reasonably base a verdict in his favor on the claims asserted.[17]

If a plaintiff fails to show a genuine issue of material fact on an essential element of his claims, summary judgment in the defendant's favor is warranted.[18] As described in detail below, Lyondell is entitled to summary judgment on all claims because Plaintiff cannot meet this burden on any of his claims against it.

---

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); FED. R. CIV. P. 56(a).

[13] *Obasogie v. Harris Cty. Hosp. Dist.*, 2013 WL 6916246, at *2 (S.D. Tex. Dec. 31, 2013)(quoting *Willis v. Roche Biomed. Labs.*, 61 F.3d 313, 315 (5th Cir. 1995))(emphasis added).

[14] *Willis v. Roche Biomed. Labs.*, 61 F.3d 313, 315 (5th Cir. 1995).

[15] *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[16] *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

[18] *Celotex*, 477 U.S. at 322.

## VI.      ARGUMENT AND AUTHORITIES

### A.      Plaintiff cannot establish a prima facie case of age discrimination.

To establish age discrimination, Plaintiff must ultimately show that age was the "but for" cause of Lyondell's decision to terminate his employment.[19]   Absent direct evidence of age discrimination, as is the case here, Plaintiff must prove his claim by circumstantial evidence using the same *McDonnell Douglas* burden shifting approach.[20]

To make a prima facie case of age discrimination, Plaintiff must show that: (1) he was a member of a protected class, *i.e.*, 40 years of age or older; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) he "was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [his] age."[21]

Whether Plaintiff's age discrimination claim is based on being placed in a new position or his ultimate termination, it fails at this first stage because he does not have any evidence that he was replaced by a younger worker or otherwise terminated because of his age. Instead, Plaintiff testified that McFall, who is in the same protected class as Plaintiff and only younger by approximately eight years, filled in for him temporarily while he was on medical leave. Additionally, Plaintiff testified that the Company placed him on the new assignment, which he discussed with McFall before returning to work, because the engineering phase on the Project would be complete within four weeks. Plaintiff's age claim also fails because he cannot offer any evidence that his age was the "but for" reason for any decision that the Company made. Plaintiff's own testimony that the Company terminated him because it allegedly needed a "scapegoat" for the

---

[19] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010).
[20] *Id.* at 922.
[21] *Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010)(quoting *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007).

overruns and delays on the Project highlights the futility of his age claim.[22] Accordingly, even if Plaintiff can establish the other elements of his prima facie case, his age claim still fails due to a lack of any evidence supporting these other critical elements.

**B.      Plaintiff cannot establish a prima facie case of disability discrimination.**

To establish a claim for disability discrimination, a plaintiff must prove that he was a qualified individual with a disability and that the adverse employment action occurred because of his disability.[23] "The term 'disability' encompasses the following: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment."[24] Whether a physical impairment substantially limits a major life activity depends on whether an individual is: (1) unable to perform a major life activity that the average person in the general population can perform, such as working; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.[25]

Plaintiff concedes that he does not have a disability. Likewise, Plaintiff does not allege that he has a record of impairment. Therefore, Plaintiff's disability discrimination claim relies entirely on his nebulous theory that Lyondell regarded him as disabled. "A plaintiff is 'regarded as' having a disability under the ADA if [he]: (1) has an impairment which is not substantially limiting but which the employer perceives as ... substantially limiting ...; (2) has an impairment which is

---

[22] *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)(finding the text of the ADEA clearly requires a plaintiff to show age was the but-for cause of the adverse employment action) *see also Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041, 1053 (S.D. Tex. 2019)

[23] *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998)

[24] *Id.*

[25] *Id.*

substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment."[26] Plaintiff's "regarded as" claim fails on all three fronts because he cannot establish that Lyondell regarded his health condition as substantially limiting.[27] Indeed, "[w]hen the major life activity at issue is working, the plaintiff must show that the employer regarded [him] as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'"[28] When other jobs utilizing a plaintiff's skills are available and the employer places or attempts to place those individuals in those positions, there is no genuine issue of fact as to whether the employer regarded the employee as disabled and summary judgment is appropriate.[29]

In *Bleak*, the plaintiff alleged that the employer's interrogatory responses and 100% healed policy created a genuine issue of material fact as to whether her employer regarded her as disabled.[30] The United States Court of Appeals for the Fifth Circuit disagreed, finding ample evidence that the company went out of its way to retain the plaintiff.[31] The crux of Plaintiff's disability claim is that the Company "order[ed]" him to a new assignment and unilaterally determined that "his health was an issue to his ability to perform the original assignment."[32] Plaintiff's own allegations and testimony highlight the similarity between his case and *Bleak*. Like the plaintiff in *Bleak*, Veit cannot establish a triable issue of fact on his disability discrimination claim because it is undisputed that the Company employed him on his return from medical leave. Moreover, as Plaintiff acknowledged during his deposition, the primary reason the Company

---

[26] *Bleak v. Providence Health Ctr.*, 454 F. App'x 366, 368 (5th Cir. 2011).
[27] *Id.*
[28] *Id.* at 368-9.
[29] *Id.* at 369.
[30] *Id.*
[31] *Id.*
[32] Complaint at ¶¶ 20 and 23.

14

reassigned Plaintiff on return from medical leave is that his previous role on the Project was estimated to be complete within four weeks. Accordingly, Plaintiff's disability discrimination claim fails because he cannot establish that the Company regarded him as disabled – a crucial element of his prima facie case.

### C.    Even if Plaintiff Makes a Prima Facie Case of Age or Disability Discrimination, Lyondell Had a Legitimate Non-Retaliatory Reason for the Termination and Plaintiff Cannot Show Pretext.

Even if Plaintiff could establish a prima facie case of age or disability discrimination his claims still fail because Lyondell had a legitimate nondiscriminatory reason for terminating his employment.[33] Courts have consistently held that poor performance is a legitimate, nondiscriminatory reason for termination.[34] During the cost re-estimate in late 2015, the Company determined that there were significant cost overruns that were, in part, directly attributable to Plaintiff's poor management of the Project.[35] Plaintiff even testified that his termination did not have anything to do with his age or alleged disability but, instead, was simply the result of the Company needing a "scapegoat" for the cost overrun.

The Company also considered Plaintiff's conduct and abrasive management style in evaluating his performance. Specifically, nearly as soon as Plaintiff began working, Lyondell received concerns from members of the Project team regarding Plaintiff's bristly management

---

[33] The ADEA and ADA evaluate circumstantial claims of discrimination under the *McDonnell Douglas* burden-shifting approach. *See e.g. Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)(applying the *McDonnell Douglas* burden-shifting framework to ADEA claims based on circumstantial evidence) and *Bleak*, 454 F. App'x at 368 ("When the plaintiff's [disability] claim is based on circumstantial evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework.").

[34] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason."); *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015); and *Cox v. Univ. of Texas MD Anderson Cancer Ctr.*, 2010 WL 3825411, at *3 (S.D. Tex. Sept. 28, 2010)(Employer's decision to terminate an employee for failure to maintain performance standards is a legitimate reason to support the termination.)

[35] As previously stated, the Company also terminated two other individuals whom it identified contributed to the cost overrun on the Project. Specifically, Lyondell also terminated David Albosta ("Albosta") and Charles Follmer ("Follmer") who were 54 and 45 years old respectively at the time of termination. Silvagnoli Dec. at ¶ 8.

style. The Company investigated the various complaints regarding Plaintiff's performance and concluded that he exhibited poor management and leadership skills. In particular, the Company's investigation concluded that Plaintiff exacerbated the divide between the various teams and contractors on the Event by instructing his Project team to withhold information about the Project from the other teams on the Event. Additionally, the Company's investigation concluded that Plaintiff created discord amongst other Lyondell employees by publicly reprimanding them.[36] The summary judgment record regarding Lyondell's legitimate and nondiscriminatory reason for terminating Plaintiff is crystal clear.

Because Lyondell has articulated a legitimate nondiscriminatory reason for its action, Plaintiff can only avoid summary judgment if he produces evidence of pretext. To do so, he must show that Lyondell's reason is false or "unworthy of credence" and motivated by discrimination.[37] To meet this burden, Plaintiff cannot rely on unsubstantiated opinions and beliefs but instead "must produce *substantial* evidence of pretext."[38] Nor can he meet this burden.

In particular, there is no credible summary judgment evidence that Lyondell's reason for terminating Plaintiff's employment is false or not credible.[39] Rather, the summary judgment records shows that Plaintiff had a consistent history of performance problems on the Project. Plaintiff has not offered any information that could refute this evidence – because there is none.[40]

---

[36] *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999)(Inability to work together with fellow employees is a legitimate non-discriminatory reason for termination) and *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002)(employee's unacceptable management style and conduct were legitimate non-discriminatory reason for termination).

[37] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).

[38] *Auguster v. Vermillion. Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001)(emphasis added).

[39] *Id.* at 403("employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief") *see also Nomani v. Star Furniture Co.*, 2016 WL 4192057, at *10 (S.D. Tex. Aug. 8, 2016)(plaintiff's "subjective belief and conclusory assertions that the repeated policy violations that led to his termination were the result of misunderstandings and confusion" were insufficient to survive summary judgment.).

[40] *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 824 (S.D. Tex. 2012)("suspicions [and] . . . mere shadows of a doubt [are] insufficient to establish pretext in the Fifth Circuit")(internal quotations omitted).

16

Notably, under the ADEA, Plaintiff must prove that age was the "but for" cause of the Company's actions.[41] Plainly, Plaintiff's Complaint forecloses his ability to make claims under the ADEA because he alleges multiple forms of discrimination including age and disability discrimination. Clearly, age cannot be the "but for" cause of his termination when he also alleges that numerous other factors, including that the Company needed a "scapegoat," allegedly motivated the Company's decision to terminate his employment.[42] Nor can he point to a single incident in which any alleged age discrimination occurred; instead, he tries to rely on pure speculation. The law is clear: he cannot survive summary judgment with speculation.[43] Plaintiff's age discrimination claim fails as a matter of law.

Under the ADA, a plaintiff can also establish pretext by showing "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic."[44] In other words, a plaintiff can "survive summary judgment by showing that an employment decision was 'based on a mixture of legitimate and illegitimate motives . . . [and that] the illegitimate motive was a motivating factor in the decision.'"[45] Courts have found fact issues regarding this motivating factor analysis in circumstances completely distinguishable from the current matter, for example when an employer told an employee that her medical condition created a potential liability for the company.[46] That is not the case here. In fact, Plaintiff cannot point to a single instance in the record where Lyondell even hinted at the fact that his health contributed to its decision to terminate his employment – because there is no such

---

[41] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012) *see also Moss*, 610 F.3d at 922.

[42] *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013)("But-for" means age is the deciding factor in the adverse employment decision.)

[43] *Barfield*, 351 F. Supp. 3d at 1055.

[44] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014).

[45] *Id.*

[46] *Id.* at 703.

evidence.[47] Even if he could, the summary judgment records contains sufficient evidence that Lyondell would have terminated Plaintiff regardless of any alleged discriminatory animus and, therefore, is still entitled to dismissal.[48] Accordingly, Plaintiff cannot raise a triable issue of fact on his disability discrimination claim, and Lyondell is entitled to dismissal as a matter of law.

## VII.   CONCLUSION AND RELIEF SOUGHT

Defendant Lyondell Chemical Company respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff Michael J. Veit's claims in their entirety, with prejudice and for all other relief to which it is justly entitled.

Respectfully submitted,

EVERSHEDS SUTHERLAND (US) LLP

By: */s/ Marlene C. Williams*
Marlene C. Williams
Attorney-in-Charge
Fed. ID No. 22824
State Bar No. 24001872
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
MarleneWilliams@eversheds-sutherland.com

OF COUNSEL
Scott R. McLaughlin
Fed. ID No. 18138
State Bar No. 00791234
John T. Hays
Fed. ID No. 3015861
State Bar No. 24101885
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100

---

[47] To the contrary, the summary judgment record actually shows that the Company allowed Plaintiff to take 12 weeks of paid leave, to which he was not otherwise entitled, and kept him in his same role and level upon return from medical leave.

[48] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Facsimile: (713) 654-1301
ScottMcLaughlin@eversheds-sutherland.com
JohnHays@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT
LYONDELL CHEMICAL COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that on August 30, 2019 a true and correct copy of the foregoing document was served electronically through the Court's ECF System to all parties of record.

/s/ *John T. Hays*
John T. Hays