EXHIBIT TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

# CIVIL ACTION NO. 4:18-CV-00576

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL J. VEIT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:18-CV-00576 |
| | § | JURY DEMANDED |
| LYONDELL CHEMICAL COMPANY | § | |
| | § | |
| Defendant. | § | |

# DECLARATION OF STANLEY TRIPP

I, Stanley Tripp, declare and state as follows:

1. "My name is Stanley Tripp. I am over 21 years of age, and I am fully competent to make this Declaration. I declare that all of the facts contained in this Declaration are within my personal knowledge, or are facts that I have investigated and confirmed acting in my capacity as the former Director of the Global Projects for Lyondell Chemical Company ("Lyondell" or the "Company"). I further declare that all of the facts I state in this Declaration are true and correct to the best of my knowledge.

2. I was the Director of Global Projects during Michael Veit's ("Veit" or Plaintiff") employment with Lyondell. As such, I am intimately familiar with the circumstances surrounding his employment and performance including; the bases for hiring him to manage the expansion of Equistar Chemical LP's ("Equistar") Corpus Christi Complex (the "Expansion Project"), his job duties and the Company's expectations regarding his role, and his performance and conduct while working in his role with the Company.

3. On or about August 26, 2014, I made the decision to hire Veit as Associate Director, Projects at an M1 Level to lead the Expansion Project. I based my decision to hire Veit for this role on the extensive project manager experience stated in his resume, his previous work relationship with the contractor on the Expansion Project, AMEC Foster Wheeler USA Corporation ("AFW"), and the personal recommendation of Lyondell's Director of Project Management Services for the Global Projects Group, Patrick McFall ("McFall"). Specifically, McFall had known Veit personally and professionally from working on various engineering projects with him for more than 30 years and he indicated the Veit would be a good leader for the Expansion Project.

4. In his role, the Company expected that Veit would lead the multi-discipline project management teams, including Company and contractor personnel, to successful completion of the Expansion Project. In order to lead the Expansion Project, Plaintiff had to work hand in hand with the Site Manager, Randy Tatum ("Tatum"), the Turnaround team leader, Allan Valenta ("Valenta") and the Event team leader, Michael Cain ("Cain"). Additionally, Plaintiff had to work closely with AFW to ensure the proper preparation and implementation of the Expansion Project plans.

5. The Expansion Project was behind schedule when the Company hired Veit. As early as December 2014, just four months after Veit took responsibility for the Expansion Project, I became aware of concerns regarding Veit's behavior and lack of leadership on the Expansion Project. Specifically, instead of improving the communication between Lyondell and AFW, Veit's harsh management style resulted in almost immediate diminishing results. By June 2015, one of Veit's colleagues on the Expansion Project, requested a meeting with McFall and me to discuss Veit's lack of leadership and conduct. A copy of that correspondence is attached to this Declaration as Exhibit B-1.

6. Many other individuals, including Valenta, Tatum, and Cain voiced similar issues regarding lack of leadership and communication with Veit. To alleviate the communication issues on the Expansion Project, the Company scheduled a

teambuilding session between Veit, Cain, Tatum, and Valenta. The goal of the teambuilding session was to enhance the quality of the communications between Veit and his colleagues and increase synergies between the Site Team, the Turnaround team and the Event team. Valenta, Tatum, and Cain, among others, voiced genuine concerns that the teambuilding session was necessary to alleviate the communication issues and get the Expansion Project back on the right track. Unfortunately, Veit did not take the teambuilding session seriously. I considered removing Veit from his role on the Expansion Project because of his conduct and lack of leadership but did not have another senior level project leader that could readily fill the role. Therefore, I decided to keep Veit in his role until the completion of the engineering portion of the Expansion Project, at which point I could remove him.

7. On or about June 25, 2015, Veit suffered a heart attack and took an extended medical leave of absence. During Veit's medical leave, McFall temporarily assumed his role on the Expansion Project. Shortly after taking over for Veit on a temporary basis, McFall reported significant issues on the Expansion Project including technical problems in various disciplines and mismanagement of vendors and logistics – all of which allowed project costs to skyrocket and created significant delays in completion deadlines.

8. Veit returned to work after his medical leave on or about September 21, 2015. However, the Company decided to assign Veit to a new project upon his return because it estimated that the engineering portion of the Expansion Project would be complete within approximately four weeks. Additionally, the Company determined that returning Veit to the Expansion Project would be counterproductive following such a long absence, and with so little time left for completion – especially in light of the negative work environment he fostered while leading the Expansion Project team. Accordingly, McFall and I determined that it was best to assign Plaintiff to a new project in the same Associate Director, Projects role and same M1 level. The new project was actually bigger in scope than the Expansion Project.

9. In November 2015, the Company conducted a cost-

re-estimate for the Expansion Project to accurately forecast the completion budget. The Company completed the cost re-estimate in January 2016 and determined that cost overruns for the Expansion Project totaled approximately $270MM. Additionally, the Company's cost re-estimate attributed the overruns to poor project management, including in planning and estimation from the Project Controls Group, much of which occurred during Veit's time leading the Expansion Project. As a result, I consulted with my Manager, Kevin Brown ("Brown"), and ultimately decided to terminate Veit's employment because of his poor performance on the Expansion Project, which included his unacceptable behavior and lack of leadership.

10. In addition to Plaintiff's missteps on the Project, the Company also determined that two additional Lyondell employees in the Global Projects Group, David Albosta ("Albosta") and Charles Follmer ("Follmer"), repeatedly relayed inaccurate costs and scheduling data, which also contributed the cost overruns on the Project. On review, Brown and I also decided to terminate Albosta and Follmer at or near the same time as Veit's termination.

11. The Company terminated Veit on January 26, 2016. I attended Veit's termination meeting with Angela Silvagnoli who, at the time, was an HR Consultant for Lyondell. During the meeting, I told Veit that the Company was terminating his employment due to his poor performance on the Expansion Project, which included the cost overruns, his lack of leadership, and his abrasive management practices.

I declare under the penalty of perjury that the foregoing is true and correct."

EXECUTED on the 29 day of August 2019.

*/s/ Stanley Tripp*
Stanley Tripp

DECLARATION OF STANLEY TRIPP